IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLY RINEHART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-1470 |
| | ) | |
| OFFICER HAMILTON OF ROBINSON POLICE DEPT., | ) | Magistrate Judge Cathy Bissoon[1] |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM ORDER**

### I. **MEMORANDUM**

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. 16) and Defendant's Motion to Strike Affidavit of Jack Wallace Wilson, III (Doc. 20). For the reasons that follow, Defendant's Motion for Summary Judgment will be granted and Defendant's Motion to Strike will be denied.

**BACKGROUND**

*Pro se* Plaintiff Kimberly Rinehart filed this action under 42 U.S.C. § 1983 against Sergeant Joel Hamilton of the Robinson Township Police Department, alleging that he arrested her without probable cause. (Compl. at 1 (Doc. 1).)

At the outset, the Court notes that the parties' submissions discuss three arrests of Plaintiff that occurred on the following dates: (i) July 19, 2009; (ii) July 20, 2009; and (iii) August 11, 2009. In her Complaint, Plaintiff cited the August 11 arrest as the factual basis of her Section 1983 claim. Id. at 1-2 (describing August 11 arrest and averring that she "was arrested without probable cause by Officer Hamilton who didn't investigate or have good cause

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case. See Consent forms (Docs. 3, 13).

that [she] was guilty" of the offenses charged).  Despite the allegations in Plaintiff's Complaint, in his motion for summary judgment, Defendant posits that Plaintiff also may be alleging that her July 19 and 20, 2009 arrests lacked probable cause.  (Def.'s Mem. of Law in Support of Mot. for Summ. Judg. (Doc. 17) ("Def's Br.") at 4.)  In her response to Defendant's Motion, Plaintiff made several counter-allegations regarding these two arrests that have led the Court to believe that Plaintiff may be challenging the constitutionality of those arrests, despite not making any formal declaration to that effect.[2]  See generally Pl's Response to Def's Mot. for Summ. Judg. (Doc. 22) ("Pl's Response").  Because Plaintiff is a *pro se* litigant and because the parties have devoted significant attention to the July 19 and July 20 arrests, the Court will address Plaintiff's Section 1983 claim as to all three arrests.  But, because it expressly is the focus of Plaintiff's Complaint, the Court first will address the August 11 arrest, and then the two prior arrests.

August 11, 2009 Arrest

On August 11, 2009, Officer Noel Pilewski responded to a report from a resident at 117 Village Drive in Coraopolis, PA that a seven-year-old boy had been kicked out of his home by his mother because he wanted ice cream.  (Def's Concise Statement of Undisputed Material Facts in Supp. of Mot. for Summ. Judg. (Doc. 18) ("Def's Facts") at ¶¶ 89.)  Officer Pilewski investigated and confirmed that the seven-year-old boy was Plaintiff's son and that he was locked out of his home. (Def's Facts at ¶¶ 90-92.)  He then went to Plaintiff's home, where he first spoke to Plaintiff's friend, Jack Wilson.  Id. at ¶ 94.  Mr. Wilson was not aware of the situation with Plaintiff's son, and informed Officer Pilewski that he believed Plaintiff was at a doctor's appointment.  Id. at ¶ 95.  Officer Pilewski then went to his vehicle to call Children,

---

[2] The Court of Appeals for the Third Circuit has endorsed the position that *pro se* pleadings are to be construed liberally given that their authors lack the requisite training and facility with legal advocacy.  See Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) (articulating the need to construe *pro se* pleadings liberally); Holley v. Dep't of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999) (noting that the court should apply the applicable law to the *pro se* party's claim even if they fail to do so in their pleadings).

Youth and Families to determine if there were any active cases involving Plaintiff and confirmed that there were no open cases. Id. at ¶¶ 96-97.

Prior to going to Plaintiff's home, Officer Pilewski contacted Defendant, who was acting shift supervisor at the time, and requested that he respond to the scene. Id. at ¶ 99. Defendant, accordingly, arrived on the scene. Id. at ¶ 98. Although there is some dispute over what occurred next, the parties' disagreement does not alter the Court's legal analysis. Plaintiff alleges that she became silent and still as soon she saw Defendant, whom she recognized from past encounters. (Compl. at 2; see also Aff. of Jack Wallace Wilson III ("Wilson Aff."), attached as Exhibit 1 to Pl's Response (Doc. 22)[3].) Defendant, however, asserts that Plaintiff instantly began to shout and curse at him. Id. at ¶¶ 102-03. Plaintiff continued this behavior, despite warnings that she would be arrested for intimidating a police witness or victim (based on the outstanding criminal complaint against her, see infra) if she continued directing remarks towards him. Id. at ¶¶ 104-05. Defendant subsequently placed her under arrest for endangering the welfare of a child and intimidation of a police witness or victim. Id. at ¶¶ 106-112.

The Court takes judicial notice that, on July 6, 2010, Plaintiff was tried in the Court of Common Pleas of Allegheny County for the charges related to her August 11, 2009 arrest.[4] See Court of Common Pleas of Allegheny County, Criminal Docket No. CP-02-CR-0013524-2009. Plaintiff was found not guilty for intimidating a police witness or victim. Id. The Court additionally takes judicial notice that the charge for endangering the welfare of a child was withdrawn prior to the July 6 trial. Id.

---

[3]  Defendant has filed a motion to strike this affidavit. See infra note 6 (discussing Defendant's Motion to Strike).
[4]  "[A] federal court may take judicial notice of [state] court records and dockets." Kolmiris v. Monroe County Syndicate, No. 08-0539, 2009 WL 73785, at *2 n. 8 (M.D. Pa. Jan. 8, 2009) (citations omitted).

- 3 -

July 19, 2009 Arrest

On July 19, 2009, while on duty patrolling, Defendant observed Plaintiff operating a blue Nissan Altima. (Def.'s Facts at ¶¶ 7-10.) In an unrelated conversation earlier that day, Plaintiff had informed Defendant that her driver's license was suspended, and on that knowledge, Defendant initiated a traffic stop of Plaintiff's vehicle. Id. at ¶¶ 2-5, 11-12. Defendant asked Plaintiff to provide her driver's license, proof of insurance, and vehicle registration. Id. at ¶ 14. Plaintiff acknowledged that her driver's license was suspended and provided Defendant with a Pennsylvania identification card. Id. at ¶¶ 15-16. She failed to provide either her signed vehicle registration card or proof of insurance. Id. at ¶ 16. Upon verifying Plaintiff's driver's license with the Pennsylvania Department of Transportation, Defendant not only confirmed that Plaintiff's driver's license was suspended, but also learned that it had expired on October 30, 2005. Id. at ¶ 21.

As Defendant spoke with Plaintiff, he observed that her eyes were slightly bloodshot and glassy, and additionally detected an odor of alcohol. Id. at ¶¶ 17-18. Defendant suspected that Plaintiff was driving under the influence of alcohol or a controlled substance. Id. at ¶¶ 17-20, 22. Defendant asked Plaintiff if she had been consuming alcohol, which she initially denied and then later admitted that she had consumed several beers.[5] Id. at ¶¶ 19-20. He asked her to step out of her vehicle and observed that her gait was unsteady. Id. at ¶ 25. As a result, and with Plaintiff's consent, Defendant administered a series of field sobriety tests, including a Horizontal Gaze Nystagmus Test, a walk and turn test, and a one-leg stand test. Id. at ¶¶ 26-40. The field sobriety tests Defendant conducted revealed signs of impairment. Id. at ¶¶ 32-41. Based on the results of the various tests he had administered, Defendant placed Plaintiff under arrest for

---

[5] In her Response, Plaintiff concedes that she "had 1 [one] beer with a hamburger . . . right before [she] left" to get in her car. (Pl's Response at 2.)

driving under the influence.  Id. at ¶ 42.  Defendant also later administered a preliminary breath test, which indicated the presence of alcohol on Plaintiff's breath.  Id. at ¶ 44, 47.  Plaintiff also submitted to a chemical test of her breath, which additionally showed that she was under the influence of alcohol and a central nervous system depressant which rendered her incapable of safely operating a motor vehicle.  Id. at ¶¶ 51-56.  In this regard, Plaintiff admitted taking prescription Xanax earlier in the day.  Id. at ¶ 49.  Plaintiff was charged with (1) driving while operating privilege is suspended or revoked, (2) failing to sign registration card and exhibit it on demand, and (3) driving under the influence of alcohol or other controlled substances.  (Def's App., Ex. B at 3 (Doc. 19).)

July 20, 2009 Arrest

During the time that she was at the Robinson Township Police Department in connection with her July 19 arrest, Plaintiff became angry and verbally abusive and uncooperative, stating that she was going to "just kill herself."  (Def's Facts at ¶¶ 58-62.)  As a result, Plaintiff was transported to Sewickley Valley Hospital for chemical testing.  Id. at ¶ 63.  On the way to the Hospital and at the Hospital, Plaintiff continued to be verbally abusive and belligerent, made threats to harm herself and her children, and threatened and cursed Defendant.  Id. at ¶¶ 64-69.  After being advised that Plaintiff was released from the Hospital, Defendant also was advised that Plaintiff had said that Defendant's "daughter is going to be dead before he gets home."  Id. at ¶¶ 74-75.  Later that day, on July 19, Defendant contacted the Sewickley Borough Police Department about the threat to his daughter.  Id. at ¶ 76.  As a result, police officers from the Sewickley Borough Police Department investigated the threat allegations and on July 20, 2009, obtained a warrant for Plaintiff's arrest for making terroristic threats.  Id. at ¶¶ 83-86.  On July 20, 2009, officers of the Sewickley Borough Police Department arrested Plaintiff without

incident. Plaintiff was later released on bail with the condition that she was to have "[n]o contact with [Defendant]" and "[n]o contact with witnesses." Id. at ¶¶ 85-88.

The Court takes judicial notice that, on July 6, 2010, Plaintiff was tried in the Court of Common Pleas of Allegheny County for the charges related to the July 20 arrest. See Court of Common Pleas of Allegheny County, Criminal Docket No. CP-02-CR-0014331-2009. Plaintiff was found guilty of making terroristic threats against Defendant, and sentenced to two years of probation. Id.

**ANALYSIS**

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

To determine whether Plaintiff was unlawfully deprived of her Fourth Amendment rights in a false arrest claim under § 1983, the critical inquiry is "not whether the person arrested in fact committed the offense, but whether the arresting officers had *probable cause* to believe the person arrested had committed the offense." Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). Probable cause "exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (referencing Beck v. Ohio, 370 U.S. 89, 91 (1964)). The test for probable cause is "an objective one, based on 'the facts available to the officers at the moment of the arrest.'" Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994) (citing Beck, 370 U.S. at 89). In addition, the fact that a charge is withdrawn or a plaintiff

is acquitted at trial does not establish that the arrest lacked probable cause in violation of Section 1983. Pittman v. McDuffy, 240 Fed.Appx. 524, 525-527 (3d Cir. 2007) (affirming the district court's grant of summary judgment dismissing the plaintiff's § 1983 claim for false arrest, which was brought after the plaintiff had been acquitted of the charges for which he was arrested). Rather, the relevant inquiry is circumscribed to determining whether probable cause existed *at the time of the arrest*, irrespective of the eventual disposition of the matter. Id. On a motion for summary judgment, the court may conclude that an officer had probable cause to initiate an arrest when "'the evidence, viewed most favorably to [p]laintiff, reasonably would not support a contrary factual finding'" Estate of Smith v Marasco, 318 F.3d 497, 514 (3d Cir. 2003) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

### A. The August 11, 2009 Arrest

Plaintiff was arrested on August 11 for endangering the welfare of a child and for the intimidation of a witness. The Court concludes that Defendant had probable cause to arrest Plaintiff for endangering the welfare of a child, namely her seven-year-old son.

#### *1. Plaintiff's Section 1983 Claim*

Under Pennsylvania law, the offense of endangering the welfare of a child is committed when "(1) A parent…supervising the welfare of a child under 18 years of age . . . knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a). The undisputed facts establish that the police ventured to Plaintiff's residence not of their own volition, but because a nearby resident had contacted the Robinson Township Police Department and reported that a woman had kicked out her seven-year-old son from his home for wanting ice cream and prevented him from re-entering by locking the door. At the time that the police responded to the call, Plaintiff's son was at the home of a nearby

resident.[6]  The police verified Plaintiff's son's identity at the resident's house and only then proceeded to Plaintiff's home.  When they arrived at Plaintiff's residence, they questioned her house guest, Jack Wilson, who was unaware of the situation with Plaintiff's son.  In fact, Mr. Wilson informed the police that he believed Plaintiff was at a doctor's appointment.  Under these circumstances, particularly given that they were informed that Plaintiff was not at home and her guest did not know the whereabouts of Plaintiff's son, the Court finds that the undisputed record contains sufficient evidence to find the existence of probable cause to arrest Plaintiff for endangering the welfare of her seven-year-old son.

Plaintiff's only attempt to challenge the facts surrounding her August 11, 2009 arrest is a vague statement in her Response that the individual who called the police in the in the first instance will reverse her statement to the police and testify that her son "<u>didn't</u> say his mother kicked him out."  (Pl's Response at 9.)  However, Plaintiff has failed to provide an affidavit from this individual, or any other evidence to support such an averment.  Plaintiff also does not explain why the individual has suddenly been inspired to change her story.  In short, other than Plaintiff's unsupported assertion in her Response, there is no reason to believe that the neighbor would testify in this way.  Moreover, even if the neighbor would testify to this, it still fails to establish that Plaintiff was aware of her son's whereabouts, or that she communicated this knowledge to the arresting officers such that they had reason to believe that she had not violated her duty of care to her young son.  Although Plaintiff may believe that this charge is defamatory, malicious, and false, she has not offered any evidence indicating that it was, at the time, devoid of factual support.

---

[6] The Court observes that the resident's home is not simply next door to Plaintiff's home, but is approximately 2/10 of a mile away on another street that directly leads to Route 51, which is a major road in the area.

In the absence of evidentiary support, the Court is left to conclude that Plaintiff's claim is unsubstantiated, and therefore that it fails to create a genuine issue of fact that would otherwise preclude summary judgment. Fed. R. Civ. P. 56(e)(2) (providing that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or otherwise provided in this rule – set out specific facts showing a genuine issue for trial"); Orasatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) (stating that "a plaintiff cannot resist a properly supported motion for summary judgment merely be restating the allegations of [her] complaint, but must point to concrete evidence in the record that supports each and every essential element of [her] case").

In addition to endangering the welfare of a child, Plaintiff also was arrested for intimidation of a police witness or victim for shouting at Defendant. In the Affidavit of Probable Cause, Officer Pilewski asserted that Plaintiff immediately began shouting when she saw Defendant, and continued doing so even after Defendant advised her that she would be arrested for intimidating a police witness or victim if she refused to contain herself. Plaintiff, however, has introduced an affidavit from Jack Wilson, her friend and witness at the scene, alleging that contrary to being belligerent and defiant, she was subdued and silent during the entire encounter.[7] (Wilson Aff. at 1.) Although Mr. Wilson's averments may challenge the factual basis of the intimidation charge, it bears no influence on the endangerment of the welfare of a

---

[7] Plaintiff submitted the Affidavit of Jack Wilson in support of her response in opposition to Defendant's Motion for Summary Judgment. Defendant filed a Motion to Strike the Affidavit of Jack Wallace Wilson, III (Doc. 20) on the grounds that Mr. Wilson was not disclosed as a witness and that, as a result, his testimony may not be used for purposes of opposing Defendant's motion for summary judgment. See Def's Mot. to Strike at ¶¶ 3-6. The Court observes that it is not as though Defendant was unaware of Mr. Wilson's existence as a potential witness. He not only was disclosed, by name, in Plaintiff's Complaint (see Doc. 1 at 3), but he was questioned by Robinson Township Police Officers on August 11, 2009. In any event, Mr. Wilson's affidavit ultimately is insufficient to create an issue of fact. As such, Defendant's Motion to Strike (Doc. 20) is denied. See Smith v. U.S., No. 02-264, 2004 WL 1879212, at *7 n. 9 (W.D. Pa. June 30, 2004) (Baxter, J.) (denying motion to strike because the court found the affidavits "to be unavailing for purposes of deciding [d]efendant's motion for partial summary judgment, [and accordingly,] [d]efendant has not been prejudiced by the submission of these affidavits in opposition to its motion").

child. As Mr. Wilson has not created any issues of fact as to the endangerment charge, his affidavit does not alter the Court's conclusion above that probable cause existed on that charge and accordingly, it cannot defeat summary judgment. See Johnson v. Knorr, 477 F.3d 75, 84-85 (3d Cir. 2007) (recognizing "rule that there need not have been probable cause supporting charges for every offense for which an officer arrested a plaintiff for the arresting officer to defeat a claim of false arrest. The rationale for this rule is that 'the existence of probable cause [for one offense] . . . justifie[s] the arrest – and defeats [the plaintiff's] claim of false arrest – even if there was insufficient cause to arrest on the [second offense] alone.'") (alterations in original) (citations omitted); see also Barna, 42 F.3d at 819 (stating that "[a]s long as the officers had some reasonable basis to believe [plaintiff] had committed a crime, the arrest is justified as being based on probable cause. Probable cause need only exist as to any offense that could be charged under the circumstances.").

For all of the above reasons, Defendant is entitled to summary judgment on Plaintiff's Section 1983 claim for false arrest as to the August 11, 2009 arrest.

### 2. *Qualified Immunity*

In the alternative, Defendant argues that summary judgment should be granted in his favor because he is entitled to qualified immunity. (Def's Br. at 15-19.) The Court agrees.

Qualified immunity "shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Miller v. Clinton County, 544 F.3d 542, 547 (3d Cir. 2008) (quoting Harlow v. Fitzgerald, 457 U.S. 800 (1982)). The immunity, therefore, applies "unless the official's conduct violated a clearly established constitutional right." Pearson v. Callahan, --- U.S. ---, 129 S. Ct. 808, 816 (2009). Generally, the question of whether qualified immunity applies consists of two inquiries: (i)

whether the official's conduct at issue violated a constitutional right and (ii) whether the constitutional right alleged to have been violated was "clearly established" at the time of the conduct. Pearson, 129 S. Ct. at 815-16; Saucier v. Katz, 533 U.S. 194, 200-02 (2001).

As to the first prong of this inquiry, the Court of Appeals for the Third Circuit has held that if no constitutional right was violated, "the qualified immunity inquiry is at end; the officer is entitled to immunity." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). As to the second prong of the inquiry, a right was "clearly established" at the time of the violation, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citations to other published authority omitted); see also Bennett, 274 F.3d at 137 (clarifying that the "focus in this step is solely upon the law. If it would not have been clear to a reasonable officer what the law required under the facts alleged, he is entitled to qualified immunity. If the requirements of the law would have been clear, the officer must stand trial").

In the context of the action at bar, a police officer is entitled to qualified immunity if "'a reasonable officer could have believed that probable cause existed' to arrest [Plaintiff] 'in light of clearly established law and the information the [arresting] officers possessed.'" Blaylock v. City of Philadelphia, 504 F.3d 405, 411 (3d Cir. 2007) (quoting Hunter v. Bryant, 502 U.S. 224 (1991)).

As determined above, probable cause existed for Plaintiff's arrest on August 11, 2009 and therefore, there was no violation of Plaintiff's Fourth Amendment rights, thereby satisfying the first prong of the Saucier inquiry. On this basis alone, qualified immunity is appropriate. But, assuming, *arguendo*, that probable cause did not exist and that Plaintiff's Fourth

Amendment rights were violated, Defendant still is entitled to qualified immunity. To reiterate, the record reveals that Plaintiff's son was at the home of a nearby resident and that he had relayed to the police that he was kicked and locked out of his home by Plaintiff. Moreover, neither Plaintiff nor Mr. Wilson was able to confirm the child's whereabouts. Based on the undisputed record evidence, it was objectively reasonable for Defendant to conclude that Plaintiff had violated "a duty of care, protection or support" to her minor son. 18 Pa. C.S.A. § 4304(a).

In short, Defendant is entitled to the qualified immunity privilege. For this additional reason, Defendant is entitled to summary judgment on Plaintiff's Section 1983 claim for false arrest based on the August 11, 2009 arrest.

### B. The July 19 Arrest

Defendant argues, among other things, that summary judgment is appropriate on Plaintiff's Section 1983 claim premised on the July 19 arrest because the arrest was supported by probable cause. Defendant also argues that he is entitled to qualified immunity. The Court agrees.

Plaintiff was charged with (i) driving under the influence, (ii) driving with a suspended or revoked license; and (iii) failing to provide signed registration card. Under Pennsylvania law, "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle" if the "individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle." 75 Pa. C.S.A. § 3802(d)(3). Also under Pennsylvania law, "any person who drives a motor vehicle on any highway or trafficway of this Commonwealth after the commencement of a suspension, revocation or cancellation of the

operating privilege and before the operating privilege has been restored is guilty of a summary offense . . . ." 75 Pa. C.S.A. § 1543(a).

The undisputed facts establish that Defendant had probable cause to arrest Plaintiff for the offenses of driving under the influence and driving with a suspended license.[8] It is undisputed that Plaintiff's driver's license was suspended and that she had informed Defendant of this earlier in the day. It also is undisputed that Defendant, while on duty patrolling, observed Plaintiff operating a motor vehicle. Given his conversation with Plaintiff earlier in the day, Defendant initiated a traffic stop, at which point he confirmed that Plaintiff's driver's license was suspended and, in fact, had expired in October, 2005. These facts alone indisputably establish that Defendant had probable cause to arrest Plaintiff for driving with a suspended license.

This is likewise true for the charge of driving under the influence. During this traffic stop, Defendant also observed that Plaintiff's eyes were bloodshot and detected an odor of alcohol. During their initial conversation, Plaintiff admitted to Defendant that she had consumed some beer earlier in the day. Indeed, even in her Response to Defendant's Motion, Plaintiff admits that she "had 1 beer . . . right before [she] left [to get in her car to drive]." (Pl's Response at 2.) After Plaintiff stepped out of the car, Defendant observed that Plaintiff's gait was unsteady. Defendant also administered a series of field sobriety tests, which revealed that Plaintiff was impaired. Plaintiff subsequently underwent additional tests, including a chemical test, which revealed that she was under the influence of alcohol and a central nervous depressant. Defendant's undisputed evidence, along with Plaintiff's admission of consuming alcohol, is sufficient to establish the existence of probable cause for the offense of driving under the

---

[8] Although Plaintiff also was charged with failing to provide a signed registration card upon demand pursuant to 75 Pa. C.S.A. § 1311(b), because the Court concludes that probable cause existed as to the other two charges, the Court need not reach the issue of whether probable cause existed as to this charge. See Johnson, 477 F.3d at 84-85 (noting that probable cause for one charge justifies the entire arrest).

- 13 -

influence of alcohol or a controlled substance. See 75 Pa. C.S.A. § 3802; see also Commonwealth v. Angel, 946 A.2d 115, 118 (Pa. Super. Ct. 2008) (finding that state trooper had probable cause to arrest for driving under the influence where defendant-motorist, after being stopped for a vehicle code violation, was observed exhibiting "classic signs of intoxication," including "an odor of alcohol together with . . . slurred speech and glassy eyes").

Plaintiff has proffered absolutely no evidence to rebut Defendants' evidence. As with the August 11 arrest, Plaintiff merely offers are own allegations that she was not under the influence of alcohol or drugs, but provides no support for these allegations. Although Plaintiff asserts that she has a "notarized statement from [her] passenger [,] David Ward [,]" who purportedly could rebut some of the above evidence, she has not offered it to the Court. In any event, the information that Plaintiff asserts Mr. Ward could provide is immaterial.[9] But, as discussed above, Plaintiff's bare assertions, without more, cannot defeat summary judgment. Fed. R. Civ. P. 56(e)(2); Orsatti, 71 F.3d at 484.

Alternatively, for the same reasons discussed above for the August 11 arrest, Defendant is entitled to qualified immunity on the false arrest claim arising out of the July 19 arrest. Even if probable cause did not exist, based on the undisputed facts set forth above, it was objectively reasonable for Defendant to conclude that Plaintiff was driving with a suspended license and under the influence of alcohol or a controlled substance. For this additional reason, Defendant is entitled to summary judgment on Plaintiff's Section 1983 claim for false arrest based on the July 19, 2009 arrest.

---

[9] Although Plaintiff is proceeding *pro se*, it is not as though she is not aware of the process of attaching or providing a notarized statement of a witness, as evidenced by the fact that she did provide a notarized affidavit of Jack Wilson, discussed *supra*, in connection with the events of August 11.

### C. The July 20 Arrest

On July 20, 2009, Defendant was arrested for making terroristic threats. Defendant argues that Plaintiff's claim premised on the July 20 arrest should be dismissed because he was not involved in the arrest. The Court agrees.

"The United States Supreme Court has held that liability under 42 U.S.C. § 1983 is individual and requires evidence of personal involvement in a constitutional violation." McGowan v. Borough of Ambridge, No. 06-0858, 2008 WL 4200153, at *5 (W.D. Pa. Sept. 5, 2008) (McVerry, J.) (citing Rizzon v. Goode, 423 U.S. 363 (1976)). The undisputed record evidence establishes that Defendant was not the arresting officer, did not execute the Affidavit of Probable Cause, and did not file the Criminal Complaint. Instead, Plaintiff was arrested by an officer of an entirely different police department, namely the Sewickley Borough Police Department. Indeed, far from arresting Plaintiff, Defendant actually was the *victim* of Plaintiff's crime of terroristic threats. Accordingly, summary judgment is appropriate for Defendant on Plaintiff's false arrest claim based on the July 20 arrest. See McGowan, 2008 WL 4200153, at *5 (granting summary judgment to defendant-officer on false arrest claim based on an arrest effected by an Ambridge police officer because defendant, who was a sergeant with the Harmony Township Police Department, "was not a supervisor of any of the Ambridge Borough police officers, he was not a member of the Ambridge police department, he did not execute the Affidavit of Probable Cause for Plaintiff's arrest, nor was he the arresting officer").

Moreover, as noted above, the Court takes judicial notice that the Court of Common Pleas of Allegheny County adjudicated the terroristic threats charge, and found Plaintiff guilty of that charge. As such, *this* Court must consider "whether a judgment in favor of the plaintiff [in the present § 1983 action] would necessarily imply the invalidity of [that] conviction or sentence." Grier v. Klem, 591 F.3d 672, 677 (3d Cir. 2010) (citing Heck v. Humphrey, 512 U.S.

477, 487 (1994)). Because these two proceedings involve the same exact occurrence and, indeed, the same exact legal question, a subsequent judgment in *this* Court that Plaintiff's July 20, 2009 arrest occurred without probable cause would be a direct assault on the validity of the state court's ruling. Therefore, the Court concludes that allowing Plaintiff to challenge the July 20, 2009 under § 1983 would constitute an impermissible collateral attack on the state court's judgment, and as such is barred under the Heck standard. See Grier, 591 F.3d at 677. Accordingly, Plaintiff's Section 1983 claim premised on the July 20, 2009 arrest also is dismissed under Heck.

For all of the reasons stated above, the Court hereby enters the following:

## II. ORDER

Defendant's Motion for Summary Judgment (Doc. 16) is **GRANTED** in its entirety and all of Plaintiff's claims under 42 U.S.C. §1983 for false arrest are **DISMISSED WITH PREJUDICE**. It is further **ORDERED** that Defendant's Motion to Strike Affidavit of Jack Wallace Wilson, III (Doc. 20) is **DENIED**.

**IT IS SO ORDERED**.

                                                s/ Cathy Bissoon
                                                Cathy Bissoon
                                                U.S. Magistrate Judge

September 3, 2010

cc (via e-mail):

Paul D. Krepps, Esq.
Rebecca L. Magyar, Esq.

(via First-Class U.S. Mail):

KIMBERLY RINEHART
1180 Hayes Avenue
Coraopolis, PA 15108